UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
PAULA F. GUITY,

                      Plaintiff,

      – against –

RIVERHEAD CENTRAL SCHOOL
DISTRICT., *et al.*

                    Defendants.
------------------------------------------------------------- X

**MEMORANDUM DECISION
AND ORDER**

17-cv-07008 (AMD) (AKT)

**ANN M. DONNELLY**, United States District Judge:

On December 1, 2017, the *pro se* plaintiff filed a complaint against the Riverhead Central School District and school officials Dr. Charles Regan, Patrick Burke, and Aimee Niegocki, alleging federal and state law claims on behalf of herself and her minor son, J.L.G. (ECF No. 1.) On May 18, 2018, the plaintiff, represented by counsel, filed an amended complaint. (ECF No. 17.) At a March 25, 2019, conference before the Honorable Joseph F. Bianco, the plaintiff, who was no longer represented by an attorney, withdrew all claims brought on her son's behalf. (ECF No. 40, 2:9-3:8.) Judge Bianco dismissed the remaining federal claims, but granted the plaintiff leave to file an amended complaint to address the deficiencies discussed during the conference.[1] (*Id.* 11:1-10.) On May 10, 2019, the plaintiff filed the second amended complaint (ECF No. 41), which the defendants moved to dismiss on July 17, 2019 (ECF No. 48).[2] Despite receiving three extensions, the plaintiff failed to file an opposition brief or otherwise respond to the Court's

---

[1] Judge Bianco declined to exercise supplemental jurisdiction over the plaintiff's state law claims. (ECF No. 40, 7:20-25.)

[2] The case was reassigned to me on May 31, 2019.

1

orders. Accordingly, on October 1, 2019, I ruled that the motion to dismiss was fully briefed. For the reasons discussed below, I grant the defendants' motion to dismiss.

## BACKGROUND[3]

The plaintiff is an African-American woman and parent of J.L.G., a male student of African-American and Hispanic heritage, who attends Riverhead High School in the Riverhead Central School District. (ECF No. 41 ¶ 9.) The plaintiff's son has a "documented learning disability." (*Id.* ¶ 22.) The Riverhead Central School District complies with the Dignity For All Students Act ("DASA"), a New York State law designed to eliminate discrimination and harassment in schools. (*Id.* ¶ 15.) The district designates one administrator in each school as the Dignity Act Coordinator, and trains each to respond to "human relations in the area of race, color, weight, national origin, ethnic group, religion, religious practices, disability, sexual orientation, gender identity, or sex." *Dignity For All Students Act (DASA)*, RIVERHEAD CENTRAL SCHOOL DISTRICT (2017), https://www.riverhead.net/parentsstudents/dasa.[4] During the events at issue, defendant Patrick Burke was the assistant principal and Dignity Act Coordinator at the Riverhead High School. (ECF No. 41 ¶ 13.)

On November 30, 2016, the plaintiff notified the school's security supervisor, an African-American man, that students were sexually harassing and bullying her son. (*Id.* ¶ 15.) The following day, the plaintiff's son complained to Mr. Burke, who coerced him to attend a peer mediation session with his alleged abuser instead of implementing the school's DASA protocols. (*Id.* ¶ 22.) The confrontation caused J.L.G. to experience an "emotional meltdown" requiring an intervention by the school psychologist, Aimee Niegocki. (*Id.* ¶ 23.) Mr. Burke and Dr. Charles

---

[3] All facts are taken from the second amended complaint. (ECF No. 41.)

[4] The complaint incorporates the Riverhead Central School District's website by reference. *See generally* Fed. R. Civ. Proc. 10(c) and *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014).

Regan, the school principal, directed Ms. Niegocki to evaluate J.L.G., and told her not to call the plaintiff about her son's condition. (*Id.* ¶¶ 24-26.)

Ms. Niegocki reviewed J.L.G.'s special education file and later informed the plaintiff that her son "appears to be paranoid and detached from reality;" she asked whether that behavior was "part of his learning disability." (*Id.* ¶ 32.) The plaintiff complained to Mr. Burke about Ms. Niegocki, and asked why the school disregarded DASA protocols and forced her son to confront his alleged abuser. (*Id.* ¶ 36.) When the plaintiff accused Mr. Burke of discriminating against her son because of his race, ethnicity, and disability (*id.* ¶ 38), Mr. Burke "became unhinged;" he asserted that he was entitled to choose peer mediation to resolve the dispute, and implied that the plaintiff's son had an "acute" mental impairment. (*Id.* ¶¶ 37-38.)

The plaintiff filed a formal complaint against Mr. Burke and Ms. Niegocki with Dr. Regan. (*Id.* ¶ 42.) Dr. Regan met with the plaintiff, but did not answer her questions about her son's treatment, explaining that Ms. Niegocki had not written anything down. (*Id.* ¶¶ 46-48.)

The plaintiff filed a "Notice of Intent" with the Board of Education on December 8, 2016, and filed a complaint with the Office of Civil Rights a week later. (*Id.* ¶¶ 5-6.)

## STANDARD OF REVIEW

A court evaluating a motion to dismiss must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, an action will survive only if the law recognizes the claims, and if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This standard requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Allegations in *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

The plaintiff asserts a variety of federal and state law claims arising from the school's treatment of her son. Because the plaintiff has abandoned claims brought on her son's behalf, (ECF No. 40, 2:9-3:8), I interpret the claims in the second amended complaint as asserted on her own behalf. Further, because parents do not have standing to assert claims on their own behalf for a violation of their child's rights, *see T.P. v. Elmsford Union Free Sch. Dist.*, No. 11-CV-5133, 2012 WL 860367, at *3 (S.D.N.Y. Feb. 27, 2012), the plaintiff must allege her own constitutional injuries. *See HB v. Monroe Woodbury Cent. School Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *18-19 (S.D.N.Y. Sept. 27, 2012) (collecting cases).

I. **Federal Law Claims**

   a. **Title VI Claim**

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be

4

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to have standing to bring a Title VI claim against Riverhead High School, the plaintiff must allege that: (1) Riverhead High School received federal financial assistance, (2) she was an intended beneficiary of the program or activity receiving the assistance, and (3) Riverhead High School discriminated against her on the basis of race, color, or national origin in connection with that program or activity. *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 379 (E.D.N.Y. 2000).

Because the plaintiff is not an intended beneficiary of federally-funded school programs, she does not have standing to pursue Title VI claims on her own behalf. *Rodriguez v. Boursiquot*, No. 09-CV-0802, 2010 WL 985187, at *4 (S.D.N.Y. Mar. 17, 2010) (The plaintiff lacked "standing to bring the Title VI claim" because "the intended beneficiaries of a federally funded public school program are school children not their parents.") (citations and quotation marks omitted).

Even if she did have standing, however, the plaintiff has not alleged facts sufficient to show that the defendants discriminated against her because of her race. "In order to establish a claim based on [Title VI], the plaintiff must show, *inter alia*, that the defendant discriminated against [her] on the basis of race...that the discrimination was intentional...and that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). The plaintiff alleges that the defendants discriminated against her because she is black and has a son that is both black and Hispanic. However, the plaintiff does not allege any facts to support this legal conclusion, such as "long-term practices of discrimination" or "comments made by individuals suggesting that they harbor racial biases." *Lopez v. Bay Shore Union Free School*

*Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 716 (2d Cir. 1994)).

Moreover, even if the plaintiff had standing to assert a claim on her own behalf for discrimination against her son the Title VI claim fails. Under Title VI, teachers, administrators, and boards of education can be liable for "student-on-student" racial harassment if they are deliberately indifferent to it. *Gant v. Wallingford Bd. Of Educ.*, 195 F.3d 134, 140-41 (2d Cir. 1999). The complaint, however, does not allege facts sufficient to support the legal conclusion that the defendants were deliberately indifferent to J.L.G.'s harassment by fellow students.

### b. Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects parents' fundamental right to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Thus, although "the State has a profound interest in the welfare of the child, any interference with family integrity must be in accord with procedural and substantive due process guarantees." *Cornigans v. Mark Country Day School*, No. 03-CV-1414, 2006 WL 3950335, at *5 (E.D.N.Y. July 12, 2006) (quoting *Shapiro v. Kronfeld*, No. 00-CV-6286, 2004 WL 2698889, at *12 (S.D.N.Y. Nov. 24, 2004) and *Tenenbaum v. Williams*, 193 F.3d 581, 593-94 (2d Cir. 1999)). There is no violation of due process, however, "unless the parent-child relationship itself has been targeted." *Love v. Riverhead Central School Dist.*, 823 F. Supp. 2d 193, 200 (E.D.N.Y. 2011).

Because "[t]he law on this issue is couched in terms of custody, which generally refers to physical custody of a child," *Cornigans*, 2006 WL 3950335, at *5, courts have held that merely questioning students at school without parental consent does not violate parents' due process rights. *See id.* at *6 (Law enforcement's interview of a student without parental notification did

not "constitute[] a removal or other interference triggering due process interests."); *Love*, 823 F. Supp. 2d at 200-01 (The "questioning or searching a child at school in connection with a drug investigation without the parents' consent or notice" does not "constitute[] a removal or other interference with the parent-child relationship that would trigger a parent's due process interest.").

Here, the plaintiff alleges that the defendants forced her son to attend a peer mediation session and receive a psychological evaluation at school. Neither of these actions removed J.L.G. from the plaintiff's custody or specifically targeted the plaintiff's relationship with her son. Accordingly, the defendants' failure to notify the plaintiff or obtain her consent before they took these actions does not constitute a violation of due process.[5]

### c. First Amendment Claim

To state a First Amendment retaliation claim, the plaintiff must allege that: (1) she has an interest protected by the First Amendment; (2) the defendants' actions were motivated or substantially caused by her exercise of that right; and (3) the defendants' actions effectively chilled the exercise of her First Amendment right. *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted). To show that the defendants' actions were "motivated or substantially caused" by her speech, the plaintiff must plead facts "from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994). The plaintiff cannot rely on "[a]llegations of a

---

[5] The same is true if the facts are viewed in the context of a substantive due process claim. Parents and children have a substantive due process right "to remain together without the coercive interference of the awesome power of the state." *Tenenbaum*, 193 F.3d at 600 (quoting *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1997)). To state a substantive due process claim, the plaintiff must plead that the separation was "so shocking, arbitrary and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* The second amended complaint does not include any facts that, if true, would rise to that level of conduct.

subjective chill." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Indeed, "[w]here a party can show no change in [her] behavior, [she] has quite plainly shown no chilling of [her] First Amendment right to free speech." *Curley*, 268 F.3d at 73 (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995)).

The plaintiff argues that the defendants sent her son to peer mediation and for a psychiatric evaluation to retaliate against her for complaining to the school's supervisor that other students were harassing her son. The defendants do not dispute that the plaintiff has a First Amendment right to complain to public officials. *See generally Gagliardi*, 18 F.3d at 194. However, the plaintiff has not sufficiently alleged the "requisite nexus," *id.* at 195, between the exercise of her First Amendment right to complain and the alleged retaliatory actions taken by school officials against her and her son. The plaintiff alleges only that she registered her complaint with the school's security supervisor, not the school officials that allegedly acted against her and her son. Nor has the plaintiff alleged facts demonstrating that her right to complain to public officials was "actually chilled." Indeed, the plaintiff continued to complain and exercise her right to voice her concerns to school officials even after the allegedly retaliatory conduct. (*See* ECF No. 41 ¶ 42.) The plaintiff's First Amendment claim is dismissed.

### d. Disability Discrimination Claims

The plaintiff claims that the defendants violated the Individuals with Disabilities Education Act when they did a psychological evaluation of her son without her consent. The purpose of the IDEA is to provide children with disabilities access to a "free appropriate public education." 20 U.S.C. §§ 1400(c)-(d). "Under the IDEA, an individual education program, called an IEP for short, serves as the primary vehicle for providing each child with the promised [free appropriate public education]." *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 749

8

(2017) (citations and quotation marks omitted). The IDEA allows parents dissatisfied with their child's IEP to seek judicial review, but only after at least two layers of administrative review. *Id.* A plaintiff's failure to exhaust administrative procedures in connection with an IDEA claim deprives the federal court of subject matter jurisdiction. *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citations omitted).

To state a claim under the IDEA, the plaintiff must show either that the state's procedure for adopting the individualized education plan violated the IDEA, or that the plan adopted by the state is not "reasonably calculated to enable the child to receive educational benefits." *Kalliope R. ex rel. Irene D. v. New York State Dept. of Educ.*, 827 F. Supp. 2d 130, 140-41 (E.D.N.Y. 2010) (citations omitted). The plaintiff does not allege that J.L.G. had a disability covered by the IDEA. Nor does the plaintiff allege that J.L.G. had an IEP, or that the state failed to comply with the IDEA's procedural and substantive requirements in adopting an individualized educational program. Therefore, the IDEA claim is dismissed.

A liberal reading of the plaintiff's complaint also suggests claims for discrimination under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Nevertheless, these claims must be dismissed as well.

### i. *Subject Matter Jurisdiction*

20 U.S.C. § 1415(*l*) requires that a plaintiff bringing suit under the ADA, the Rehabilitation Act, "or other Federal laws protecting the rights of children with disabilities" must "first exhaust the IDEA's administrative procedures" when "seeking relief that is also available under" the IDEA. *Fry*, 137 S. Ct. at 750 (citing 20 U.S.C. § 1415(*l*)). As discussed above, the IDEA requires at least two layers of administrative review, and a plaintiff's failure to exhaust

administrative procedures, if required, deprives the federal court of subject matter jurisdiction. *Cave*, 514 F.3d at 245.

In cases involving claims under the IDEA and other disability statutes, the IDEA exhaustion procedures are required only if the "gravamen of the plaintiff's complaint" seeks redress for the failure to provide a free appropriate public education, as required by the IDEA. *Fry*, 137 S. Ct. at 755. By contrast, when the gravamen of the plaintiff's complaint seeks relief for disability-based discrimination, administrative exhaustion under the IDEA is not required. *Id.* at 756.

Courts analyzing the gravamen of a complaint must first ask whether the plaintiff could have "brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school?" and, second whether "an *adult* at the school...[could] have pressed essentially the same grievance?" *Id.* The plaintiff claims that the defendants subjected her son to a psychological evaluation because of his "documented disability." The plaintiff could bring this claim if the psychological evaluation had occurred at a public facility other than a school, or if the psychological evaluation targeted a teacher, rather than a student, at the school. The gravamen of the plaintiff's complaint seeks relief for disability-based discrimination, not for denying her son access to free public education. Accordingly, the IDEA exhaustion requirements do not bar claims under the ADA or the Rehabilitation Act.[6]

ii. *Failure to State Claims*

---

[6] Although parents may not bring claims derivative of injuries to their children as a general matter, courts in this Circuit have found that parents have standing "to bring ADA and Rehabilitation Act claims on their own behalves when their disabled child was the one directly injured because 'a parent of a child with a disability has a particular and personal interest in preventing discrimination against the child.'" *Doe v. U.S. Secretary of Transportation*, 17-CV-7868, 2018 WL 6411277, at *7 (S.D.N.Y. Dec. 4, 2018) (quoting *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012) (collecting cases)).

Nevertheless, the plaintiff has failed to state claims under the ADA or Rehabilitation Act. To make out a *prima facie* case under Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must show "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to the [pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Eskenazi-McGibney v. Connetquot Central School Dist.*, 84 F. Supp. 3d 221, 231 (E.D.N.Y. 2015) (quoting *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009)).

The plaintiff alleges that J.L.G. had a "documented learning disability," but provides no additional facts from which the Court can conclude that he suffers from a disability within the meaning of the ADA or Rehabilitation Act. Further, the plaintiff has not alleged facts that show that the defendants subjected her son to a psychological evaluation because of a covered disability. On the contrary, according to the second amended complaint, the school psychologist spoke with the plaintiff's son because he was experiencing an "emotional meltdown," and only discovered later, after reviewing his file, that he had a learning disability. Accordingly, the plaintiff has not pled facts sufficient to demonstrate a nexus between the defendants' alleged conduct and J.L.G.'s alleged disability.

### e. Municipal Liability

The plaintiff also sues the District for violating her constitutional rights. For a municipality to be liable under Section 1983, the plaintiff must prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). As explained above, the plaintiff has not alleged a constitutional violation. Thus, the plaintiff's *Monell* claim fails as

a matter of law. *See Johnson v. City of New York,* 551 F. App'x. 14, 15 (2d. Cir. 2014) ("Because he has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to *Monell*...must also fail.") (summary order).

Even if there were a constitutional violation, the plaintiff did not meet her burden to sustain a *Monell* claim. A custom or policy is established "in one of four ways: by alleging the existence of: (1) a formal policy; (2) action taken or decisions made by policymakers that caused the violation [alleged]; (3) a practice so persistent and widespread that it constitutes a 'custom or usage;' or (4) a failure to properly train or supervise municipal employees." *Byvalets v. New York City Hous. Auth.,* No. 16-CV-6785, 2017 WL 7793638, at *14 (E.D.N.Y. July 28, 2017), *report and recommendation adopted,* 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018) (citing *White v. City of N.Y.,* 206 F. Supp. 3d 920, 937 (S.D.N.Y. 2016) (citation omitted)).

The plaintiff does not allege that the District had a formal policy, or that a policymaker made a decision that denied her a constitutional right. Rather, she relies on the other two remaining ways of establishing *Monell* liability. She claims that the defendants had a custom of ignoring DASA protocols and forcing students to mediate, and that the defendants failed to train their officials to implement DASA policy.

To plead the third *Monell* kind of liability—custom or usage—the plaintiff must allege "a longstanding practice or custom which constitutes standard operating procedure." *Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 737 (1989). The policy must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Byvalets,* 2017 WL 7793638, at *16 (quoting *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 871 (2d Cir. 1992)). In other words, the relevant practice must be "so widespread as to have the force of law." *Board of County Comm'rs. v. Brown,* 520 U.S. 397, 404 (1997) (citations omitted).

In determining if a practice is widespread, "courts have found a wide range of instances insufficient to plausibly allege a municipal custom." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 95 (E.D.N.Y. 2016).[7] "[I]solated acts...by non-policymaking municipal employees are generally not sufficient[.]" *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). The plaintiff has alleged only one instance in which a non-policymaking school official chose to resolve a student dispute through peer mediation rather than DASA protocols. Therefore, the plaintiff does not allege sufficient facts to demonstrate an official policy or custom under a theory of persistent or widespread conduct.

Finally, to demonstrate that a municipal failure to train constitutes deliberate indifference, a plaintiff must allege: (1) "a policymaker knows to a moral certainty that [his or] her employees will confront a given situation;" (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *W.A. v. Hendrick Hudson Cent. Sch. Dist. & Kathleen Coughlin*, No. 14-CV-8093, 2016 WL 1274587, at *10 (S.D.N.Y. Mar. 31, 2016) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure

---

[7] *See, e.g., Giaccio v. City of New York*, 308 F. App'x. 470, 472 (2d Cir. 2009) (summary order) (the plaintiff "identifie[d], at most, only four examples" of defendants' allegedly wrongful behavior which "[fell] far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability.") (citations and internal quotation marks omitted); *Cruz v. City of New York*, No. 15-CV-2265, 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) ("[E]ight cases cited from a municipality (New York) far bigger than Newburgh, makes the number of cited cases particularly inadequate to demonstrate plausibly a municipal custom."); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (thirteen instances of similar excessive force allegations over a four year period were insufficient to state a custom where, during that time period "hundreds, if not thousands, of arrests were made").

to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted).

The complaint does not include facts sufficient to allege that a policymaker "knows to a moral certainty that [his or] her employees will confront a given situation." *Hendrick Hudson Cent. Sch. Dist.*, 2016 WL 1274587, at *10. The plaintiff does not identify a policymaker in relation to the alleged incidents, or allege that any policymaker had "moral certainty" that an employee's conduct would deprive the plaintiff of her constitutional rights. Therefore, these claims are dismissed.

## II. State Law Claims

I decline to exercise jurisdiction over the plaintiff's state law claims. "Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."). Having dismissed all federal claims in this action, I decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. *Klein & Co. Futures. Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are

eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the plaintiff's second amended complaint is granted. A court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations, quotation marks, and citation omitted). "The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs." *Marcelin v. Cortes-Vazquez*, No. 09-CV-4303, 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) (citing Fed. R. Civ. P. 15(a)(2) and *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citation omitted)). Because the plaintiff is representing herself, I give her an opportunity to cure the deficiencies discussed in this order with respect to the claims brought under the First Amendment, the ADA, and the Rehabilitation Act.[8] For the ADA and Rehabilitation Act claims, the amended complaint must detail J.L.G.'s disability and allege facts that the defendants acted against J.L.G. because of his disability. For the First Amendment claim, the amended complaint must allege facts that the defendants acted against her and J.L.G. because of her complaints and that the defendants' actions actually chilled her speech. The amended complaint must be filed within 30 days of this order. If the plaintiff fails to file an amended complaint within 30 days, the complaint will be dismissed and judgment will enter.

---

[8] The Court, however, maintains discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). I find that amendment of the remaining claims would be futile.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
December 4, 2019